UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ARMANIA INGRAM, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>ADT, LLC,<br><br>        Defendant. | No. 3:20-CV-376-HBG |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 21].

Now before the Court is Defendant's Motion for Summary Judgment [Doc. 33] and Plaintiff's Motion to Amend [Doc. 41]. The parties appeared before the Court on October 25, 2021, for a motion hearing. Attorney Ben Miller appeared on behalf of Plaintiff. Attorneys Daniel Blynn, J. Ford Little, and Michael Munoz appeared on behalf of Defendant. Accordingly, for the reasons further explained below, the Court will **GRANT** Defendant's Motion [**Doc. 33**] and **DENY** Plaintiff's Motion [**Doc. 41**].

### I. BACKGROUND

This case stems from the telephone calls that Defendant placed to Plaintiff. Defendant states that most of the calls occurred between March 2020 and mid-April 2020, when its call center representatives began working from home due to the Covid-19 pandemic. Defendant claims that it placed nearly 1,186 non-telemarketing, manually dialed telephone calls to Plaintiff's cellular telephone number as the result of an internal routing error. [Doc. 45 at ¶ 1]. Plaintiff claims that

some of the calls she received from Defendant involved the use of an artificial or prerecorded voice. [Doc. 50 at 1-2]. As such, Plaintiff filed a lawsuit alleging Defendant violated the TCPA.

Relevant to the instant matter, prior to Plaintiff filing this lawsuit, the parties participated in settlement negotiations. Specifically, on March 23, 2020, Plaintiff emailed Defendant complaining that she had received over fifty (50) telephone calls from Defendant's customers who were told that they were being transferred. [Doc. 36-9 at 2]. Plaintiff stated that somehow the calls were transferred to her cell phone, and she requested that the harassment stop. [*Id.*]. On April 6, 2020, Plaintiff followed up with Defendant via email and requested that Defendant cease and desist the telephone calls. [Doc. 37-2 at 10-11]. Plaintiff requested that Defendant contact her within seven (7) days to resolve the issue and stated that she is willing to amicably resolve this situation without involving a court. [*Id.* at 11]. In response, Joe Racz ("Racz"), Defendant's contact compliance representative, emailed Plaintiff stating that her telephone number had been added to Defendant's Internal Do-Not-Contact List. [Doc. 37-2 at 10]. After Defendant identified and corrected the issue, Plaintiff requested contact information to seek compensation for the telephone calls and to avoid legal action. [*Id.* at 7-8]. In response, Racz provided Plaintiff contact information for Maria DiGirogio ("DiGirogio"), Defendant's Senior Corporate Counsel. [*Id.* at 5].

On April 24, 2020, Plaintiff emailed DiGiorgio to advise her of the calls that she had received from Defendant, and Plaintiff requested compensation. [*Id.*]. Plaintiff stated that "Racz resolved the issue after my attorney advised that I submit the cease-and-desist letter." [*Id.*]. On April 28, 2020, DiGiorgio responded that Plaintiff received the telephone calls due to a technical glitch with the telephone platform, and while it denied legal liability, Defendant stated that it was prepared to offer compensation for the nuisance of having received the calls. [*Id.* at 3]. Defendant

offered an amount, which represented a sum certain per telephone call. [*Id.*].[1] The parties continued to exchange settlement offers via email for several weeks. *See* [Doc. 37-4]. On May 9, 2020, Plaintiff proposed a counteroffer, stating, "My attorney advised we can take this to the next level legally for a minimum of $500 per call due to Tennessee law. I am asking for a minimum of $ (REDACTED) per call as advised per my attorney." [*Id.* at 4].

On May 22, 2020, Daniel McGrath, Defendant's Deputy General Counsel, emailed Plaintiff with a final settlement offer. [*Id.* at 2]. McGrath stated, "As there has been no violation of either federal or Tennessee law, I have been directed to respond and defend as required if you decline my offer and elect to pursue formal litigation. In this regard, if you work with an attorney, I would welcome the opportunity to speak with him or her to discuss this matter. All of my contact information is listed below. If you accept the offer, which I hope you do, we would ask you to sign a short release." [*Id.* at 3]. On May 27, 2020, Plaintiff responded as follows:

> Thank you for your time and consideration. After reviewing your response and the time I've spent trying to resolve this henderance [sic] and hardship on my business. [sic] I accept your offer of $ (REDACTED). I will also sign the short release. What are the next steps?

[*Id*. at 2]. On June 4, 2020, McGrath emailed Plaintiff the one-page settlement agreement and general release ("Settlement Agreement") [Doc. 37-5 at 2]. In relevant part, the Settlement Agreement provides the following:

> As further material consideration for the foregoing payment agreement of ADT, Releasor agrees that the terms, settlement amount, negotiations leading to and existence of this Release shall remain STRICTLY CONFIDENTIAL and the same shall not be published, broadcasted or disclosed to any person or media outlet, except as ordered or compelled by a court of competent jurisdiction.

---

[1] The parties have redacted the amounts offered in the emails.

[Doc. 37-5 at 8].

Plaintiff did not sign the Settlement Agreement. Instead, on June 24, 2020, her current counsel sent McGrath and DiGiorgio the following email:

> I represent Armania Ingram on her claim against ADT for calls made to her cell phone in violation of the TCPA. I have just been made aware that you have been communicating with her directly despite knowing she was represented by counsel. Please cease all communications with her and direct all further communication to me.
>
> We are willing to explore an individual settlement but will need the call data for the calls to Ms. Ingram's number. If ADT is unwilling to provide it, we intend to file a class action.
>
> Please let me know how ADT would like to proceed.

[Doc. 37-6]. On August 24, 2020, Plaintiff filed the original Complaint alleging violations of the TCPA and later amended her Complaint on February 16, 2021. [Doc. 26].

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To

4

establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

### III. ANALYSIS

The Court has considered the parties' filings and the oral arguments presented at the motion hearing. Accordingly, for the reasons explained below, the Court will **GRANT** Defendant's Motion [**Doc. 33**] and **DENY** Plaintiff's Motion [**Doc. 41**].

Defendant moves for summary judgment on two grounds. First, Defendant argues that Plaintiff's claims are barred by her pre-suit settlement and release. Second, Defendant states that the proof establishes that it did not use an automatic telephone dialing system or an artificial or pre-recorded voice pursuant to 47 U.S.C. § 227 *et seq*., and therefore, Plaintiff's TCPA claim fails

5

Case 3:20-cv-00376-HBG    Document 57    Filed 12/29/21    Page 5 of 13    PageID #: 602

as a matter of law. The Court will first address whether Plaintiff's claim is barred by her pre-suit settlement as this issue is dispositive of Defendant's second argument.

As mentioned above, Defendant argues that Plaintiff's pre-suit settlement and release constitutes a binding and enforceable contract between the parties. Defendant argues that it is irrelevant that Plaintiff did not execute the one-page Settlement Agreement because the offer was not qualified on the condition of approving the language in the Settlement Agreement. Defendant states that courts regularly enforce settlement agreements even if the parties have not executed the settlement agreement.

Plaintiff argues that the parties did not reach an agreement on all the material terms. Specifically, Plaintiff states that the Settlement Agreement included a confidentiality clause and that she never agreed to a confidentiality clause. In the event the Court finds that the parties agreed to the material terms, Plaintiff seeks an order that the parties' agreement is unenforceable as it was made in violation of Tennessee Rule of Professional Responsibility 4.2

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir. 1976) (citations omitted), *cert. denied,* 429 U.S. 862 (1976). The Sixth Circuit has explained that a "federal court possesses this power 'even if that agreement has not been reduced to writing.'" *Brock v. Scheuner Corp*., 841 F.2d 151, 154 (6th Cir. 1988) (quoting *Bowater N. Am. Corp. v. Murray Mach.,* 773 F.2d 71, 77 (6th Cir. 1985)) (other citations omitted). The Court, however, must determine whether the parties have reached an agreement on all material terms. *Id.* Settlement agreements are governed by contract law, and a court must look at the law of the state

to determine whether a contract was formed. *Eagle Cap. Funding, LLC v. Lowman Finishing, Inc.,* No. 1:03 CV 207, 2005 WL 1077726, at *3 (E.D. Tenn. Mar. 8, 2005).[2]

In Tennessee, "a contract must result from a meeting of the minds, must be based upon sufficient consideration, and must be sufficiently definite to be enforced." *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991) (citing *Johnson v. Central National Insurance Co. of Omaha*, 356 S.W.2d 277, 281 (Tenn. 1962)). "Indefiniteness as to any essential element of an agreement may prevent the creation of an enforceable contract." *Id.* (citing *Jamestowne on Signal, Inc. v. First Federal Savings and Loan Ass'n.*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990)); *see also Payne v. Bradley*, No. M201901453COAR3CV, 2021 WL 754860, at *5 (Tenn. Ct. App. Feb. 26, 2021) (stating the same). "To be enforceable, the parties must have agreed on essential terms." *Gurley v. King*, 183 S.W.3d 30, 35 (Tenn. Ct. App. 2005) (citing *Kelly v. Rio Grande Computerland Group*, 128 S.W.3d 759, 766-67 (Tex. App. 2004)).

In the instant matter, the Court finds that the parties reached an agreement on all the material terms. The material terms are Plaintiff's compensation for the telephone calls Defendant placed to her and her release of Defendant from liability arising out of the telephone calls. In response to Defendant's final offer, Plaintiff unequivocally accepted, stated that she will sign a

---

[2] The Sixth Circuit has also explained that an evidentiary hearing is required if the facts material to the agreement are in dispute, but an evidentiary hearing is not required when the agreement is clear and unambiguous, and no issue of fact is present. *RE/MAX Intern., v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). In the instant matter, no party has requested an evidentiary hearing on this issue, and the Court finds an evidentiary hearing unnecessary. *See id.* ("No evidentiary hearing was held in the instant case because neither party requested one. Indeed, none was required because the record shows that all the essential terms had been agreed upon in open court and all that remained was to sort out the non-material details and put the agreement in writing."). As summarized above, the parties negotiated the settlement via email, and the parties simply dispute whether the confidentiality provision contained in the Settlement Agreement is a material term.

release, and inquired about the next steps. *Gurley*, 183 S.W.3d at 38 ("Under some circumstances, a binding a contract may be formed if the parties agree on the material terms, even though they leave open other provisions for later negotiation.") (quoting *Kelly*, 128 S.W.3d at 766-67).

The parties negotiated the settlement agreement over the course of a month. During their email negotiations, the parties never mentioned a confidentiality provision. *Blackstone v. Brink*, 63 F. Supp. 3d 68, 77 (D.D.C. 2014) ("Terms may be deemed immaterial when the parties do not discuss them during negotiations, but rather only bring them up after-the-fact."); *see also Dyer v. Bilaal*, 983 A.2d 349, 358 (D.C. 2009) ("A case clearly may be settled without a confidentiality clause. Such a provision certainly *could* have been deemed material, but neither party referred to confidentiality in the e-mail, in the acceptance, or in open court."). Accordingly, based on the circumstances in this case, the Court finds that the parties agreed to the material terms of the settlement agreement.

Plaintiff relies on *Lakin v. Bloomin' Brands, Inc.*, to assert that a confidentiality provision is a material term. No. 17-CV-13088, 2019 WL 6463716, at *3 (E.D. Mich. Dec. 2, 2019). In *Lakin*, the court found that the parties did not agree to the material terms of the settlement because they did not agree to a confidentiality provision. *Id.* The defendants argued that plaintiff agreed to a confidentiality provision, which plaintiff denied. *Id.* Specifically, plaintiff's counsel emailed defense counsel asking for confirmation of the settlement amount. *Id.* Defense counsel responded one minute later, "Yes. With a dismissal with prejudice and confidentiality." *Id.* Counsel for the plaintiff did not respond. *Id.* Later, in an email exchange, plaintiff made unilateral changes to the release, and defense counsel explained that the changes were not acceptable because confidentiality was part of the agreement. *Id.*

8

The court found that the parties did not have a meeting of the minds on the essential term of confidentiality. *Id*. The court noted that plaintiff's counsel did not respond to defense counsel's email regarding confidentiality. *Id*. In addition, at the evidentiary hearing, plaintiff's counsel denied participating in any discussions about confidentiality. *Id*. Further, plaintiff's counsel wrote the words, "REJECTED 18 JULY 2019" next to the confidentiality language in the settlement agreement. *Id*. Based on these circumstances, the court concluded that the parties "remain in dispute over the confidentiality clause—a material term to the settlement agreement," and therefore, the court declined to enforce the purported agreement. *Id.*

The Court finds the facts presented in *Lakin* are distinguishable for the instant matter. Here, the parties did not negotiate, or even mention, a confidentiality provision during the email exchanges. *See Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010 ("Whether the parties actually reached an agreement is a question of fact for the district court."). Instead, the parties spent over a month negotiating the amount of which Plaintiff should be compensated. On May 27, 2020, Plaintiff responded to Defendant's final offer with the following: "I accept your offer of $(REDACTED). I will also sign the short release. What are the next steps?"[3]

Plaintiff also argues that the Settlement Agreement refers to the confidentiality provision as "material," the words "strictly confidential" in the Settlement Agreement are bolded and capitalized, and Defendant requested that Plaintiff sign the Settlement Agreement before it released the payment. While the Court has considered Plaintiff's arguments, the Court is not persuaded by them as the parties' email exchanges prior to Plaintiff's receipt of the Settlement

---

[3] The Court also notes that in Defendant's reply brief, it represents that the first time Plaintiff raised the issue with the confidentiality provision was in her opposition to the Motion for Summary Judgment. [Doc. 51 at 10-11]. In addition, during oral argument, Defendant maintained that the first time Plaintiff raised the issue with the confidentiality provision was in her Response. Plaintiff did not dispute Defendant's representation.

Agreement establishes that the material terms are the amount of Plaintiff's compensation and releasing Defendant from liability. *See In re LG Philips Displays USA, Inc.*, No. 06-10245 (BLS), 2006 WL 1748671, at *5 (Bankr. D. Del. June 21, 2006) ("Recitations of materiality are probative but not dispositive of whether a contract is executory."). Accordingly, the Court finds Plaintiff's argument that the parties did not reach an agreement on the material terms not well taken.

Plaintiff also argues that a settlement agreement reached in violation of Rule 4.2 of the Tennessee Rules of Professional Conduct may be set aside as unenforceable. Plaintiff states that she sought and obtained the advice of counsel through various referral services. Further, Plaintiff argues that whether she was actually represented by an attorney, or just believed herself to be represented, is irrelevant to counsel's duties under Rule 4.2. Specifically, Rule 4.2 of the Tennessee Rules of Professional Conduct provides as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

The Court is unpersuaded by Plaintiff's argument for two reasons. First, there is no evidence in the record that Plaintiff was represented by an attorney at the time she negotiated and accepted Defendant's offer. During discovery, Defendant requested such information, and Plaintiff never identified the attorney referenced in her emails. For instance, Defendant requested the date that Plaintiff contacted such counsel, and Plaintiff responded that she recalled contacting counsel through an online chat and that from telephone records, it appears that her first call with counsel was May 28, 2020, "so Plaintiff believes she first consulted with counsel in this action on or before that date." [Doc. 36-4 at 2]. Notably, Plaintiff's telephone call occurred after Plaintiff

10

accepted Defendant's final offer. Further, Plaintiff's attempts to contact an attorney via an online chatroom does not mean that Plaintiff was represented by counsel.

In addition, during discovery, Defendant sought the identity of Plaintiff's attorney referenced in the May 27, 2020 email, and Plaintiff responded as follows: "I do not know which of the attorneys I consulted with was the one I was referring to in that email." [Doc. 36-5 at 2]. Defendant also requested Plaintiff to identify all the attorneys that Plaintiff had engaged as of May 27, 2020, and Plaintiff responded, "I do not know the date I first consulted with my current counsel, but I believe it was on or before May 28, 2020. I had also consulted with attorneys that I was referred to by the Knoxville Bar Associated, JustAnswer, and possibly other referral services, but I cannot recall their names." [Doc. 36-5 at 2-3]. Plaintiff produced screenshots of her discussions with an online referral service (*i.e.*, the Knoxville Bar Association), *see* [Doc. 46-3], and a discussion with a non-attorney at a law firm, *see* [Doc. 36-14], but she never produced any response identifying the attorney she referenced in her emails to Defendant.[4]

Based on the evidence in this case, the Court cannot find that Plaintiff was represented by counsel when she accepted Defendant's officer as she indicated in her emails to Defendant. The Court finds it patently unfair to allow Plaintiff to renege on her acceptance of Defendant's settlement offer based on her, at best, mistaken belief that she was represented by counsel, or at worse, a false statement that she was represented by counsel.

In support of her argument, Plaintiff relies on *Evans v. Pro. Transp., Inc.,* No. 1:12-CV-202, 2014 WL 1908808, at *2 (E.D. Tenn. May 13, 2014). In *Evans*, the court denied defendant's motion to amend its answer because defendant's counsel violated Rule 4.2 of the Tennessee Rules

---

[4] The Court notes that [Doc. 36-14] is a screenshot of a discussion between Plaintiff and a non-lawyer at The Higgins Law Firm. Plaintiff ends the discussion when the representative states that he is not an attorney. [*Id*. at 4].

of Professional Responsibility. *Id.* The defendant filed a motion to amend its answer to raise the defense that a settlement in a separate Fair Labor Standards Act wage and hour class action in Indiana, in which the Tennessee plaintiffs were class members, barred the simultaneously pending Tennessee retaliatory discharge action. *Id.* The settlement agreement resolving the Indiana action generally stated that the plaintiffs released all claims arising from their employment with defendant. *Id.* at *4. The court denied defendant's motion to amend, finding that the motion was made in bad faith because the application of the waiver provisions contained in the Indiana settlement agreement to plaintiffs' Tennessee action violated Rule 4.2. *Id.* at *5. The court reasoned that plaintiffs' Tennessee counsel were not involved in the Indiana action, they were not consulted by anyone concerning the settlement agreement of the Indiana action, and they did not give permission to negotiate a settlement of the plaintiffs' retaliatory discharge claims pending in Tennessee. *Id*. The defendant argued that it did not violate Rule 4.2 because it negotiated with class counsel in the Indiana action. *Id.*[5] The court disagreed, explaining, "Such reasoning ignores the purpose of Rule 4.2: the Rule is intended to protect the represented client from overreaching by opposing counsel because the client has not had the benefit of advice from the attorney he has already hired to represent him in that particular matter." *Id.* at *6. Accordingly, the Court denied defendant's motion to amend its answer because the waiver provision in the settlement agreement in the Indiana action violated Rule 4.2. *Id*. at *9.

The undersigned finds that the facts in *Evans* are distinguishable from the instant matter because here, there is no evidence that Plaintiff was represented by an attorney when she accepted

---

[5] The Court notes that the class counsel in the Indiana action contended that he did not communicate with the plaintiffs regarding their retaliatory discharge claims, he did not represent them in regard to their retaliatory discharge claims, and the parties to the Indiana action never discussed settlement of the plaintiffs' Tennessee action. *Evans,* 2014 WL 1908808, at *6.

Defendant's offer. *See id.* at *6 (explaining that the purpose of Rule 4.2 is to protect the *represented* client so that the client can receive the advice from the attorney he/she *has already hired* in that particular matter) (Emphasis added). Accordingly, the Court finds Plaintiff's reliance on *Evans* not persuasive in this case.

Further, other courts with similar rules have found that a violation of the anti-contact rule "is not dispositive," but instead, "the controlling issue is whether the alleged misconduct resulted in prejudice or adversely impacted the rights of [p]laintiff." *Administradora de Proyectos Neomed v. Chicago Fire Soccer, LLC*, No. 09 C 580, 2010 WL 331738, at *3 (N.D. Ill. Jan. 25, 2010) (internal quotations and brackets removed). Plaintiff fails to argue that she was prejudiced or adversely impacted by negotiating with Defendant directly. Instead, it appears from Plaintiff's emails that she desired to negotiate with Defendant directly as she requested contact information to seek compensation, and she continued to engage in negotiations over the course of a month. Accordingly, based on the facts above, the Court declines to set aside the parties' agreement to settle this matter.

Given that the Court finds that the parties entered into a settlement agreement, the Court finds it unnecessary to address the merits of Plaintiff's TCPA claim. For the same reasons, the Court also **DENIES** Plaintiff's Motion to Amend [**Doc. 41**].

IV.     CONCLUSION

Accordingly, for the reasons explained above, the Court will **GRANT** Defendant's Motion for Summary Judgment [**Doc. 33**] and **DENY** Plaintiff's Motion to Amend [**Doc. 41**]. The Court will enter a separate judgment in this matter.

ORDER ACCORDINGLY.

*/s/ Bruce Guyton*
United States Magistrate Judge

13